## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**CLAN BELL-CLAN BELL**
**NORTH AMERICA, INC.,**
**a North Carolina corporation,**

    **Plaintiff,**

                                      **Case No.:**

**v.**

**CLAN BELL SOCIETY, INC.,**
**a Florida corporation, and**
**MICHAEL A. BELL,**

    **Defendants.**
_____/

## COMPLAINT

Plaintiff, Clan Bell-Clan Bell North America, Inc. ("Clan Bell"), sues Defendants, Clan Bell Society, Inc. ("CBS"), and Michael A. Bell, and states as follows:

## PARTIES AND JURISDICTION

1.    This is an action against Defendants CBS and Michael A. Bell for unfair competition pursuant to 15 U.S.C. § 1125(d), against CBS for unfair competition under Florida law, and against CBS and Michael A. Bell for conversion pursuant to Florida law.

2.     Plaintiff Clan Bell-Clan Bell North America, Inc. is a North Carolina not-for-profit corporation with its principal office located in Bartow County, Georgia.

3.     Defendant Clan Bell Society, Inc. is a Florida not-for-profit corporation located at 3925 Bear Creek Road, Crestview, Okaloosa County, Florida.

4.     Defendant Michael A. Bell is an individual with an address at 3925 Bear Creek Road, Crestview, Florida.

5.     This Court has subject matter jurisdiction under 15 U.S.C. § 1121(a) and 28 U.S.C. § 1131.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims because those claims are so related to the federal claims that they form part of the same case and controversy.

6.     This Court has personal jurisdiction over Defendants because they transact business and reside within this judicial district, and because they have committed acts of cybersquatting, unfair competition, and conversion within this judicial District.

7.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in this District and committed the acts complained of within this District.

## FACTUAL BACKGROUND

### Plaintiff Clan Bell and its Marks and Services

8.     Plaintiff Clan Bell is a 501(c)(3) organization with its primary mission the celebration, promotion, and further discovery of the history and heritage of persons who have the surname "Bell" of various spellings throughout the United States and throughout North America.

9.     Clan Bell is frequently referred to as "Clan Bell" most commonly by its members and the public, but also by the name "Clan Bell North America."

10.     Clan Bell provides numerous services in connection with its mission. It provides those services both to its dues-paying members and to the general public.

11.     A central component of Clan Bell is the provision of educational services, both to its members and to the general public.  Clan Bell provides a variety of educational services such as historical and genealogical education, including the encouragement of DNA testing.

12.     Part and parcel with its educational services, Clan Bell conducts historical research.   It gathers historical information regarding family and nationality migration histories, health, heritage, and connectivity, which enable it to educate both its members and non-members on these subjects.

13.    Clan Bell collects and preserves historical, literary, and generalized relics of the various Bell families and those with Bell surnames worldwide.   In particular, Clan Bell's collection and preservation efforts encompass as far back as historical records will allow, including back to ancient Scottish, English, Irish, Norman, Gaelic, and Celtic records and histories.

14.    Further to these efforts, Clan Bell conducts genealogy research.   It collects, compiles, and makes genealogical and related DNA data available both to its members and researchers to better understand inter-family relationships and the possible related medical issues such research might yield.   Accordingly, Clan Bell strongly encourages DNA testing by its members and others who may have ties or connections to the Bell family or surname.

15.    In addition to its educational and research services, Clan Bell seeks to build relationships by sharing and perpetuating national and family traditions among its members and with other organizations outside the United States which share similar goals.

16.    Clan Bell participates in numerous festivals and games throughout the United States and North America under the "Clan Bell" name.   Chief among these are Scottish Highland Festivals, wherein Clan Bell operates and hosts "Clan Bell" tents.   At the tents, Clan Bell provides information and fraternal fellowship.   Clan Bell teams also participate in various games and activities at these festivals, all

4

under the "Clan Bell" name.   Clan Bell uses and displays various banners, logos, handouts, and other information items at various games and festivals.  In addition to its participation at festivals and games, Clan Bell hosts "Burns Night" events to celebrate the poetry of Robert Burns specifically as well as the Scottish heritage more generally.

17.    Several ways that Clan Bell promotes its services are via its website, located at https://www.clanbell.org, and via its Facebook page, located at https://www.facebook.com/ClanBell/.

18.    Previously, Clan Bell owned, hosted, and had exclusive administrative control of a Facebook group page called "Clan Bell," located at https://www.facebook.com/groups/ClanBell/ (the "Facebook Group Page").   At this site, members of CLAN BELL as well as the general public could read, view, and post information, updates, news, and photos for viewing by the group at large. It was a group page for communication both among members and the general public about the operations and services of Clan Bell, and much more.

19.    Clan Bell also distributes a quarterly newsletter by mail and e-mail.

20.    Clan Bell offers numerous goods for sale via its website and at events and festivals.  These products include, among other items, shirts, banners, pewter items (including crest badges), a quaich (drinking bowl for whiskey consumption),

pins, magnets, and beach towels.  Clan Bell's product offerings bear the "Clan Bell" name and various designs.

21.   In connection with the services it provides, Plaintiff owns the exclusive right to use, and uses in commerce, the marks "CLAN BELL" and "CLAN BELL NORTH AMERICA" (collectively, the "Marks").  Clan Bell displays the Marks prominently in numerous ways, including but not limited to on its website, its Facebook page, previously on the Facebook Group Page, in its newsletters, on its literature which is disseminated to members and non-members, on tents at festivals and in games, and in other ways.

22.   Clan Bell has filed applications for the registration of both Marks with the United States Patent and Trademark Office ("USPTO"):

   a.   U.S. Serial Number 97/796,640, for "CLAN BELL" in International Class 035;

   b.   U.S. Serial Number 97/797,542, for "CLAN BELL" in International Class 041;

   c.   U.S. Serial Number 97/798,495, for "CLAN BELL NORTH AMERICA" in International Class 035; and

   d.   U.S. Serial Number 97/798,246, for "CLAN BELL NORTH AMERICA" in International Class 041.

6

23.    Since its inception in 2014, Plaintiff has offered numerous services in interstate commerce under the Marks, including the above-described services. Moreover, at the time of its formation Clan Bell continued to provide the same services that its predecessor organization, Clan Bell International, Ltd. (a California entity which disbanded in 2014) and merged organizations have provided since approximately 1985.   Numerous board members of Clan Bell International, Ltd. served on Plaintiff's initial board of directions and continued the services offered by Clan Bell International, Ltd.   Thus, the services offered by Clan Bell under the "Clan Bell" mark have been continuously provided in the United States since at least 2004 and sooner, as various predecessor organizations to Clan Bell International, Ltd. existed and used the "Clan Bell" mark prior to its inception.

24.    As a result of Clan Bell's promotion of its services, the Marks have become closely associated with Clan Bell's high quality and unique services. Although inherently distinctive, Clan Bell's marks have also acquired additional distinctiveness.

25.    Plaintiff has made significant efforts and has expended funds to establish the notoriety of the Marks as well as the services offered thereunder. Through Clan Bell's continuous, and extensive use and promotion of the Marks in commerce, the Marks have generated substantial and valuable goodwill and

customer recognition.   As a result, Plaintiff has generated significant secondary meaning in its Marks.

26.   As a result of Clan Bell's longstanding and widespread use and promotion of services in connection with the Marks, consumers and the public closely associate the Marks with Clan Bell's services.  Plaintiff's Marks are held in high regard and rely on Plaintiff's reputation, as embodied in Plaintiff's Marks, receiving the benefit of Plaintiff's services offered in association with the Marks.

27.   Plaintiff owns and has the exclusive right to use the Marks in connection with its services.  Plaintiff owns all right, title, and interest in and to the Marks as used in connection with its services.

**<u>Defendants' Unauthorized and Wrongful Conduct</u>**

28.    In October 2019, due to their various wrongful and disruptive actions and misconduct, Clan Bell voted to terminate the memberships of Defendant Michael A. Bell as well as Clan Bell's former President David E. Bell.  David E. Bell had served as President of Clan Bell from 2014 until October 2018, and had also served as President of Clan Bell International, Ltd. from 2013 to 2014, when Clan Bell was formed.

29.   Very shortly after their terminations from Clan Bell, Defendant Michael A. Bell and former Clan Bell President David Bell formed Defendant Clan

Bell Society, Inc. in Florida.  CBS's effective date of incorporation was January 1, 2020.

30.    Defendant Michael A. Bell is the President of CBS and has held that role since the formation of CBS effective January 1, 2020.  He previously served as the Membership Chair for Clan Bell from 2016 until July 2019.

31.    On or about December 1, 2019, Defendant CBS (or a party under CBS's control) registered the domain name https://clanbellsociety.org (the "Infringing Domain Name").  Since 2020, CBS has operated a website at the Infringing Domain Name on which CBS sells memberships to CBS, advertises CBS's participation at various festivals and events, displays photographs of tents bearing the "Clan Bell" name, provides information regarding family history and genealogy, and sells branded products.

32.    CBS has registered to participate at the same events as Clan Bell, which has caused damage to Clan Bell.  It has caused Clan Bell to be excluded from events and festivals because certain organizers do not permit multiple organizations to participate under the same or similar name.  Moreover, the existence of multiple "Clan Bell" organizations at games and festivals is likely to cause and does cause confusion among participants, members, potential members, and the general public as to the source of the services provided by Clan Bell.  It

also creates the continuing risk that Clan Bell could be excluded from future events, games, and festivals in the future.

33.     Moreover, Defendants CBS and/or Michael A. Bell have taken control of the Facebook Group Page and excluded Clan Bell and its officers and directors from administrative access to the page.  As of today's date, Clan Bell's President and newsletter editor cannot even access the Facebook Group Page.  Defendants have used the Facebook Group Page to remove content referencing Clan Bell, denigrate Clan Bell, and promote CBS.  Defendants have further made false, misleading, and disparaging claims about Clan Bell on the Facebook Group Page.

34.     Defendants' conduct demonstrates their use of Plaintiff's Marks in connection with the same or similar services as Plaintiff.  Defendant CBS has promoted itself under identical marks to Plaintiff's Marks.  Defendant CBS is thus passing itself off as Plaintiff.

35.     In addition to CBS, Defendant Michael A. Bell actively and knowingly caused the infringement alleged and is a corporate officer of CBS who has personally taken part in infringing activities.

36.     Plaintiff's rights in and to the Marks are superior to Defendants' use of Plaintiff's Marks, as Plaintiff's use of the Marks predates Defendants' use. Plaintiff is the senior user of the Marks and has priority of use.

37.     Defendants have willfully, knowingly, and intentionally used marks confusingly similar to Plaintiff's Marks to promote and advertise identical and similar services to Plaintiff.  They have intended to confuse consumers about the source of the services offered to divert consumers and potential participants away from Plaintiff and to Defendants.  Defendants' use of Plaintiff's Marks is designed to mislead consumers into believing that Defendant CBS is the source of the services provided by Plaintiff.

38.     Defendants' use of marks confusingly similar to Plaintiff's Marks is likely to cause confusion.  Defendants are promoting and advertising the sale, provision, and distribution of unauthorized services through their unauthorized use of Plaintiff's Marks. Defendants are promoting Defendant CBS's services to the same consumers and potential members as Plaintiff.

39.     Members, potential members, consumers, customers, volunteers, and the public at large are likely to be confused as to the source of the services provided by Plaintiff and Defendant CBS.  In addition, Defendants' unauthorized and infringing uses are harming Plaintiff's reputation and goodwill and are damaging the value of Plaintiff's Marks and brand.

40.     Defendants' use of marks which are identical and confusingly similar to Plaintiff's Marks to promote the same or similar services as Plaintiff has caused Plaintiff irreparable harm as well as actual financial injury cannot be remedied

without both an injunction enjoining Defendants from such further wrongful conduct and monetary compensation to Plaintiff.

## COUNT I

### Violation of Anti-Cybersquatting Protection Act, 15 U.S.C. § 1125(d)

41.    This is a cause of action against Defendant CBS for violation of the Anti-Cybersquatting Protection Act under 15 U.S.C. § 1125(d).

42.    Plaintiff realleges and incorporates paragraphs 1 through 40 of this Complaint as set forth in full herein.

43.    Defendant CBS has registered, trafficked in, and used the https://clanbellsociety.org Infringing Domain Name.

44.    The Infringing Domain Name is confusingly similar to Plaintiff's Marks.   It is similar in sound, meaning, and commercial impression, and in appearance to Plaintiff's Mark.

45.    Defendant CBS has registered, trafficked in, and used the Infringing Domain Name with the bad faith intent to profit from Plaintiff's Marks.

46.    Defendant CBS has no trademark rights to the Marks.

47.    Defendant CBS made no use of the Infringing Domain Name in connection with the bona fide offering of services prior to Plaintiff's use of the Marks.

48.    Defendant CBS's conduct is willful and intentional and has caused and continues to cause injury to Plaintiff.

49.    As a result of Defendant CBS's wrongful acts and pursuant to 15 U.S.C. § 1116, 15 U.S.C. § 1117 and 15 U.S.C. § 1125(d), Plaintiff is entitled to injunctive relief, including, but not limited to, an order requiring CBS to forfeit, cancel, or transfer the Infringing Domain Name to Plaintiff, actual damages in amount to be proven at trial, treble damages of up to three times Plaintiff's actual damages, CBS's profits made from use of the Infringing Domain Name, statutory damages of not less $1,000.00 and up to $100,000.00, Plaintiff's reasonable attorneys' fees, and the costs of this action, together with prejudgment and post-judgment interest.

## COUNT II

### Unfair Competition in Violation of 15 U.S.C. § 1125(a)

50.    This is a cause of action for unfair competition against Defendants CBS and Michael A. Bell pursuant to 15 U.S.C. § 1125(a).

51.    Plaintiff realleges and incorporates paragraphs 1 through 40 of this Complaint as set forth in full herein.

52.    Plaintiff Clan Bell exclusively owns the Marks and has used the Marks in commerce since at least as early as 2014.

53.    Plaintiff's predecessor organization, Clan Bell International, Ltd., exclusively owned and used the Marks from 2004 to 2014, and still further predecessor organizations owned and used the Marks prior to 2004.

54.    Plaintiff has the exclusive right to use the Marks in interstate commerce for, among other things, advertising, promoting, offering for sale, and selling Plaintiff's services.

55.    Defendants have used marks which are confusingly similar to Plaintiff's Marks, including the names "Clan Bell" and "Clan Bell Society," in commerce in connection with, among other things, advertising and promoting substantially similar services, without Plaintiff's authorization.

56.    Defendants' unauthorized use in commerce of marks confusingly similar to Plaintiff's Marks as alleged herein is likely to deceive the public as to the origin, source, sponsorship, or affiliation of Defendant CBS's services, and is likely to cause consumers to believe, contrary to fact, that CBS's services are sold, provided, authorized, endorsed, or sponsored by Plaintiff.

57.    Defendants' unauthorized use in commerce of marks confusingly similar to Plaintiff's Marks as alleged herein also is likely to cause confusion among the public as to whether some affiliation, connection, or association exists between Defendant CBS and Plaintiff.

58.     Defendants' conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the origin, source, sponsorship, or affiliation of CBS's services as well as the affiliation, connection, or association of CBS with Plaintiff.

59.     Defendants' conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

60.     In addition to CBS, Defendant Michael A. Bell is personally liable because he actively and knowingly caused the infringement alleged and is a corporate officer of CBS who has personally taken part in infringing activities.

61.     Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiff, and to Plaintiff's goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by the court.  Plaintiff has no adequate remedy at law.

62.     Defendants' intentional and bad faith conduct through their unauthorized and misleading use of Plaintiff's marks is in essence tantamount to a theft of Plaintiff's Marks. Thus, this is an "exceptional" case pursuant to 15 U.S.C. 1117(a).

63.     As a result of Defendants' wrongful acts and pursuant to 15 U.S.C. § 1116, 15 U.S.C. § 1117 and 15 U.S.C. § 1125(a), Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, CBS's profits,

enhanced damages and profits, reasonable attorney fees, and the costs of this action, together with prejudgment and post-judgment interest.

## COUNT III

## Unfair Competition Under Florida Law

64. This is a cause of action for unfair competition under Florida law against Defendant CBS.

65. Plaintiff realleges and incorporates paragraphs 1 through 40 of this Complaint as set forth in full herein.

66. Plaintiff exclusively owns the Marks.

67. Plaintiff has the exclusive right to use the Marks in commerce in Florida for, among other things, advertising, promoting, offering for sale, and selling Plaintiff's services.

68. Defendant CBS has used marks confusingly similar to Plaintiff's Marks in commerce in Florida in connection with, among other things, advertising and promoting substantially similar services, without Plaintiff's authorization. The names and logos used by Defendants to promote CBS's services are confusingly similar to Plaintiff's Marks.

69. Defendant CBS's unauthorized use in commerce of marks confusingly similar to Plaintiff's Marks as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of CBS's services, and is likely to

16

cause consumers to believe, contrary to fact, that CBS's services are sold, provided, authorized, endorsed, or sponsored by Plaintiff.

70.    Defendant CBS's unauthorized use in commerce of marks confusingly similar to Plaintiff's Marks as alleged herein also is likely to cause confusion among consumers as to whether some affiliation, connection, or association exists between CBS and Plaintiff.

71.    Defendant CBS's conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiff, and to Plaintiff's goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by the court.  Plaintiff has no adequate remedy at law.

## COUNT IV

## Conversion

72.    This is an action for conversion under Florida common law against Defendants CBS and Michael A. Bell.

73.    Plaintiff realleges and incorporates paragraphs 1 through 40 of this Complaint.

74.    Plaintiff is the owner of the Facebook Group Page, including the administrative rights and/or credentials to the Facebook Group Page.

75.    Defendant Michael A. Bell had administrative rights to the Facebook Group Page only due to his status as an officer of Plaintiff.

76.     Defendants have wrongfully denied Plaintiff access to administrative use or control of the Facebook Group Page, primarily through denial of access to the administrative credentials.  Defendant Michael A. Bell used his administrative status as an officer of Clan Bell to convert the Facebook Group Page to his own use and that of CBS.

77.     Defendants have used the Facebook Group Page to promote CBS's services, to promote the Infringing Domain Name and website, and to promote its own infringing Clan Bell Society Facebook page.   Defendants' use of the converted Facebook Group Page has also injured Plaintiff through use of Plaintiff's Marks.

78.     Defendants have now restricted the Facebook Group Page such that Plaintiff's President and newsletter editor can no longer use or access the Facebook Group Page.

79.     Defendants have wrongfully deprived Plaintiff of its property with the intent to exercise over Plaintiff's property an ownership inconsistent with Plaintiff's right of possession.

80.     As a result of Defendants' conversion of Plaintiff's property, Plaintiff has suffered damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Clan Bell-Clan Bell North America, Inc., respectfully requests judgment against Defendants, Clan Bell Society, Inc. and Michael A. Bell, as follows:

1.     A temporary restraining order, preliminary injunction, and permanent injunction enjoining and restraining Defendants and their respective officers, agents, servants, and employees, and those persons in active concert or participation with Defendants, from:

     a.     Using or displaying the Plaintiff's Marks or any term, word, or mark, confusingly similar to Plaintiff's Marks in any way in connection with the sale, provision, offering, marketing, advertising, promoting, or distribution of any services;

     b.     Owning, registering, trafficking in, or otherwise using the Infringing Domain Name;

     c.     Owning, registering, trafficking in, or otherwise using any domain name that contains the term "CLAN BELL" or any term confusingly similar to Plaintiff's Marks;

     d.     Engaging in any activity that infringes Plaintiff's rights in the Marks;

e. Engaging in any activity constituting unfair competition with Plaintiff;

f. Making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that: (i) Defendants' services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiff; or (ii) Plaintiff's services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Defendants; and

g. Aiding, assisting, or abetting any other individual or entity in doing any act prohibited by subparagraphs (a) through (f).

2. Directing Defendants to transfer, without cost to Plaintiff, the ownership and control of the https://www.clanbellsociety.org/ Infringing Domain Name immediately to the possession of Plaintiff, and updating all database information and registration information for the https://www.clanbellsociety.org/ domain name to reflect the same.

3. Directing Defendants to transfer administrative access and control of the Facebook Group Page to Plaintiff, including providing all login credentials or other information necessary to effect such transfer.

4.     Directing Defendants to cancel with prejudice and change any and all company names, trade names, fictitious names, assumed names, domain names, Facebook or other social media page names, or other names consisting of, incorporating, or containing Plaintiff's Marks, or any counterfeit, copy, confusingly similar variation, or colorable imitation thereof, on any state or federal trademark, trade name, or corporate registry (including Secretary of State registries for entity names, fictitious names, assumed names, d/b/a names, or other marks or names).

5.     Directing Defendant to file with the Court and to serve upon Plaintiff within thirty (30) days after service of an injunction in this action, a written report by Defendant, under oath, setting forth in detail the manner in which Defendant has complied with the injunction;

6.     Awarding Plaintiff statutory damages in the amount of $100,000 per domain name pursuant to 15 U.S.C. § 117(d) due to Defendants' willful violation of 15 U.S.C. § 1125(d);

7.     Awarding Plaintiff all profits, gains, benefits, and advantages derived or realized by Defendants pursuant to 15 U.S.C. § 1117(a), enhanced as appropriate to compensate Plaintiff for the damages caused thereby;

8.     Awarding Plaintiff damages caused by Defendants' wrongful acts, in an amount to be established at trial;

9.     Awarding Plaintiff treble damages by reason of Defendant's willful and intentional acts described herein pursuant to 15 U.S.C. § 1117, in an amount to be established at trial;

10.    Declaring that this is an exceptional case pursuant to Section 35(a) of the Lanham Act, and awarding Plaintiff its reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a) Section 501.2105, Florida Statutes; and

11.    Awarding Plaintiff such further relief as this Court deems just and proper.

Respectfully submitted this 21st day of February, 2023,

> /s/ John R. Zoesch III
> **JOHN R. ZOESCH III**
> Fla. Bar No.:  45257
> jrz@beggslane.com
> **STEPHEN D. WILSON**
> Florida Bar No. 1010484
> sdw@beggslane.com
> **BEGGS & LANE, RLLP**
> 501 Commendencia Street
> Pensacola, Florida  32502
> T:  (850) 432-2451
> F:  (850) 469-3331
> *Attorneys for Plaintiff Clan Bell-Clan Bell North America, Inc.*