UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| CLAN BELL-CLAN BELL NORTH AMERICA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CLAN BELL SOCIETY, INC., and MICHAEL A. BELL,<br><br>Defendants. | Case No. 3:23-cv-4233-TKW-ZCB |

**DEFENDANTS' JOINT MOTION TO DISMISS
PLAINTIFF'S COUNTS I, II AND III[1]**

Defendants CLAN BELL SOCIETY, INC. ("CBS") and MICHAEL A. BELL ("Mr. Bell") (collectively, "Defendants"), pursuant to Fed. R. Civ P. 12(b)(6), files this Motion to Dismiss Counts I, II, and III of Plaintiff's Complaint (Doc. 1 at 12-17) of Plaintiff CLAN BELL-CLAN BELL NORTH AMERICA, INC. ("Plaintiff").

---

[1] Defendants need not file an answer to Count IV at this stage. *See Taylor v. Pekerol,* No. 5:14-CV-96-RH-GRJ, 2016 WL 7985259, at *1 (N.D. Fla. Mar. 10, 2016) (collecting cases for the proposition that "a party need not file an answer as to the unchallenged claims while a partial motion to dismiss the challenged claims is pending").

# INTRODUCTION

Defendants believe that the final result of this case will turn mostly, if not entirely, on whether Plaintiff's alleged marks, CLAN BELL and CLAN BELL NORTH AMERICA, constitute valid common law trademarks and valid common law service marks, and, if those marks are found to be valid, whether Plaintiff has any rights to enforce them. Therefore, a close inspection of these issues from the outset of this proceeding is warranted.

# RELEVANT FACTS

1. The parties in this case are both not-for-profit organizations that promote the genealogical and cultural history of those with the surname "Bell." The phrase "Clan Bell" refers to the Scottish clan historically comprised of individuals with the surname "Bell." (Doc. 1 at ¶¶ 8-9).

2. Plaintiff's Count I purports to be a claim of violation of the federal Anti-Cybersquatting Protection Act under 15 U.S.C. § 1125(d), arising from Plaintiff's alleged common law trademark and common law service mark rights in Florida. (*Id.* at ¶¶ 41-49).

3. Plaintiff's Count II purports to be a claim of violation of the Lanham Act under 15 U.S.C. § 1125(a), arising from Plaintiff's alleged common law trademark and service mark rights in Florida. (*Id.* at ¶¶ 50-63).

4. Plaintiff's Count III purports to be a claim of unfair competition under Florida common law, arising from Plaintiff's alleged common law trademark and common law service mark rights in Florida. (*Id.* at ¶¶ 64-71).

***Plaintiff's Alleged Common Law Service Marks***

5. Plaintiff claims the exclusive right to use the words CLAN BELL and CLAN BELL NORTH AMERICA as common law service marks in the State of Florida. (Doc. 1 at ¶ 21).

6. About a week before filing the instant lawsuit, Plaintiff filed four applications with the U.S. Patent & Trademark Office ("USPTO") to register its alleged service marks CLAN BELL and CLAN BELL NORTH AMERICA. (*Id.* at ¶ 22).[2]

7. Plaintiff alleges that it offers for sale services, both to its dues-paying members and to the general public, that include providing "educational services" (*id.* at ¶ 11), the conducting "historical research" (*id.* at ¶ 12), preserving "historical, literary, and generalized relics of various Bell families and those with Bell surnames worldwide (*id.* at ¶ 13), and conducting "genealogy research" (*id.* at ¶ 14).

8. Plaintiff alleges that it offers its services through its website (https://www.clanbell.org) and its Facebook page

---

[2] Most likely, it will be months before a trademark examiner begins to review these applications.

(https://www.facebook.com/ClanBell/) (*id.* at ¶ 17), as well as through a quarterly newsletter (*id.* at ¶ 19).

9. Plaintiff alleges that it offers services at in-person events and festivals, such as the Scottish Highland Festival, that include operating and hosting "Clan Bell tents" where Plaintiff "provides information and fraternal fellowship." (*Id.* at ¶ 16). At such festivals, Plaintiff allegedly advertises its services by using and displaying "various banners, logos, handouts, and other information items at various games and festivals." (*Id.* at ¶ 16). Also, Plaintiff alleges that it hosts "Burns Night" events to "celebrate the poetry of Robert Burns . . . [and] Scottish heritage more generally." (*Id.*).

10. Plaintiff alleges that it has offered services under the service marks CLAN BELL and CLAN BELL NORTH AMERICA since its inception in 2014. (*Id.* at ¶ 23). Plaintiff also alleges that it offers the same services that "various predecessor" organizations had offered since 1985 and asserts that it "continued to provide" the same services as predecessor organization Clan Bell International, Ltd. (*Id.*). Plaintiff alleges that upon its inception in 2014, "numerous members" of Clan Bell International served on Plaintiff's initial board of directors. (*Id.*). Plaintiff does not offer any facts on Clan Bell International's ownership of any "Clan Bell" marks, or any assignment or transfer of any such ownership, or any facts supporting its legal

4

entitlement to use "Clan Bell" after Clan Bell International allegedly disbanded. (*Id.*).

11. Plaintiff asserts that the general public closely associates the service marks CLAN BELL and CLAN BELL NORTH AMERICA with Plaintiff, and with no other person or entity—including any various predecessor organizations—because the general public recognizes those service marks as being closely associated with Plaintiff's "high quality and unique services" and, therefore, with Plaintiff's reputation. (*Id.* at ¶¶ 24-26). In support of this assertion, Plaintiff alleges that it has "has made significant efforts and has expended funds to establish notoriety of" Plaintiff's services and the association of those services with the service marks CLAN BELL and CLAN BELL NORTH AMERICA. (*Id.* at ¶¶ 24-26).

***Defendant's Alleged Service Mark Infringement***

12. Plaintiff accuses Defendant CBS of infringing Plaintiff's alleged common law service mark rights by advertising and offering memberships with CBS and "[providing] information regarding family history and genealogy," since 2020, through CBS's website. (Doc. 1 at ¶ 31).

13. Plaintiff accuses Defendant CBS of interfering with Plaintiff's ability to participate in in-person events, where Plaintiff offers its services. (*Id.* at ¶ 32).

14. Plaintiff accuses Defendant Mr. Bell of "personally [taking] part in infringing activities" by "actively and knowingly causing the infringement of

Plaintiff's common law trademarks by "actively and knowingly [causing] the infringement . . . as a corporate officer of CBS." (*Id.* at ¶ 35).

***Plaintiff's Alleged Common Law Trademarks***

15. Presumably, Plaintiff claims the exclusive right to use the words CLAN BELL and CLAN BELL NORTH AMERICA as common law trademarks in the State of Florida, although Plaintiff does not allege this specifically in its complaint.

16. Plaintiff does not allege that it filed any applications with the USPTO to register any alleged trademarks.[3]

17. Plaintiff alleges that it offers for sale goods such as "shirts, banners, pewter items (including crest badges), a quaich (drinking bowl for whiskey consumption), pins, magnets, and beach towels." (Doc. 1 at ¶ 20).

18. Plaintiff alleges that it offers for sale the above goods through its website (https://www.clanbell.org). (*Id.* at ¶ 20).

19. Plaintiff alleges that it offers for sale the above goods at in-person events and festivals (*Id.* at ¶ 20), where it advertises such goods by way of "various banners, logos, handouts, and other information items." (*Id.* at ¶ 16).

---

[3] To show that the four applications are for service marks only, one would have to use the USPTO's "Trademark Status & Document Retrieval" (TSDR) system at https://tsdr.uspto.gov/, and enter the serial numbers provided by Plaintiff in the complaint.

20. Nowhere does Plaintiff allege that it has offered goods for sale under the common law trademarks CLAN BELL or CLAN BELL NORTH AMERICA, continuously, since its inception in 2014 or before.

21. Nowhere does Plaintiff assert, even in a conclusory manner, that the public associates the common law trademarks CLAN BELL or CLAN BELL NORTH AMERICA with Plaintiff's goods.

***Defendants' Alleged Trademark Infringement***

22. Plaintiff accuses Defendant CBS of infringing Plaintiff's alleged common law trademark rights by advertising and offering its "branded products" for sale, since 2020, through CBS's website. (Doc. 1 at ¶ 31).

23. Plaintiff accuses Defendant CBS of interfering with Plaintiff's ability to participate in in-person events, where Plaintiff allegedly sells its goods. (*Id.* at ¶ 32).

24. Plaintiff accuses Defendant Mr. Bell of "personally [taking] part in infringing activities" by "actively and knowingly causing the infringement of Plaintiff's common law trademarks by "actively and knowingly [causing] the infringement . . . as a corporate officer of CBS." (*Id.* at ¶ 35).

[*remainder of page left blank intentionally*]

## **MEMORANDUM IN SUPPORT**

Defendant requests that Plaintiff's Count's I, II, and III be dismissed because Plaintiff has not plead facts sufficient to establish a facially plausible claim that it has a valid common law service mark, or a valid common law trademark, to assert through such claims. Specifically, the asserted marks CLAN BELL and CLAN BELL NORTH AMERICA are "descriptive marks" under Eleventh Circuit law and Florida common law. Consequently, the burden is on Plaintiff to plead facts sufficient to show a facially plausible claim that the asserted marks have acquired "secondary meaning," which in turn would make the asserted marks "distinctive" under trademark law and, thereby, valid. Plaintiff has failed to plead facts that could establish such secondary meaning for the asserted marks if taken in a light most favorable for Plaintiff.

### A. Legal Standard

A party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true," to state a facially plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In its analysis, the Court should accept all well-pleaded factual allegations of the complaint as true and evaluate all reasonable inferences derived from those facts in the light most

favorable to the plaintiff. *Newbauer v. Carnival Corp.*, 26 F.4th 931, 934 (11th Cir. 2022) (citation omitted).

### i. The Distinction Between Trademarks and Service Marks

Under the Lanham Act, the term "mark" is a general term that can refer to a trademark, service mark, collective mark, or certification mark. *See* 15 U.S.C. § 1227. "The term 'trademark' includes any word, name symbol, or device, or any combination thereof used . . . to identify and distinguish his or her **goods** . . . from those manufactured or sold by others and to indicate the source of the goods . . . ." *Id.* (emphasis added). "The term 'service mark' means any word, name, symbol, or device, or any combination thereof used . . . to identify and distinguish the services of one person . . . from the **services** of others and to indicate the source of the services . . . ." *Id.* (emphasis added).

### ii. The Distinctiveness Inquiry

For Plaintiff to show a facially plausible claim that that it owns a valid unregistered (*i.e.*, "common law") mark under the Lanham Act, Plaintiff must provide facts sufficient to show that the asserted marks "are capable of distinguishing the owner's goods [or services] from those of others." *Tana v. Dantanna's*, 611 F.3d 767, 773 (11th Cir. 2010). Put another way, the burden is on Plaintiff to show that the asserted common law marks are "sufficiently distinctive." *Id.* In the Eleventh Circuit, the four categories of distinctiveness, listed from weakest

9

to strongest, are (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful. *Id.*

Under federal law, marks that comprise a surname (such as CLAN **BELL**), and marks that constitute geographic designations (such as CLAN BELL **NORTH AMERICA**) both constitute descriptive marks. *See Tana*, 611 F.3d at 773 (analysis of a surname mark); *see also Investacorp, Inc. v. Arabian Inv. Banking Corp.*, 931 F.2d 1519, 1525 (11th Cir 1991) ("Marks which are descriptive of geographic location of the source of the service are treated in the same manner as personal name marks"). As in federal law, Florida courts have long viewed both geographic and descriptive names as descriptive marks. *See Great Southern Bank v. First Southern Bank*, 625 So.2d 463 (Fla. 1993).

Descriptive marks are not sufficiently distinctive until they acquire "secondary meaning," which occurs "when the primary significance of the term in the minds of the consuming public is not the product but the producer." *Tana*, 611 F.3d at 773. Although not directly relevant at this stage, it is worthwhile to note that "Plaintiff has the burden of sustaining a high degree of proof in establishing a secondary meaning for a descriptive term." *Investacorp Inc.*, 931 F.2d at 1525.

In the Eleventh Circuit, the Court considers four factors in assessing secondary meaning: (1) the length and nature of the name's use, (2) the nature and extent of advertising and promotion of the name, (3) the efforts of the proprietor to

10

promote a conscious connection between the name and the business, and (4) the degree of actual recognition by the public that the name designates the proprietor's product or service. *Tana*, 611 F.3d at 776.

To establish a facially plausible claim, Plaintiff must demonstrate distinctiveness in the relevant geographic market, or, in other words, "the pool of actual and potential customers" of Defendant's goods and services. *Tana*, 611 F.3d at 776 (ruling that a mark with a surname that had acquired distinctiveness in Los Angeles had not done so in Atlanta). *Id.* Further, Plaintiff's "concerted effort to promote its product," although relevant, is not alone sufficient to establish a facially plausible claim of secondary meaning. *D.H. Pace Co., Inc. v. Aaron Overhead Door Atlanta LLC*, 522 F.Supp.3d 1315, 1332 (N.D. Ga. 2020)(citing multiple Eleventh Circuit cases).

### iii.  Secondary Meaning Analysis and Plaintiff's Counts

Regarding Plaintiff's Count II (violation of 15 U.S.C. § 1125(a)), the elements of the claim, as established in Eleventh Circuit caselaw, require Plaintiff to show that the asserted common law mark is distinctive. *See Tana*, 611 F.3d 767, 773 (11th Cir. 2010).

Regarding Plaintiff's Count I (violation of 15 U.S.C. § 1125(d)), Plaintiff must show that Defendant registered or used a domain name that was a distinctive

mark at the time of the domain name's registration. *See Jysk Bed'N Linen v. Dutta-Roy*, 810 F.3d 767, 778-80 (11th Cir. 2015).

Regarding Plaintiffs Count III, when analyzing secondary meaning, Florida courts refer to federal case law on comparable provisions of the Lanham Act. *See Great Southern Bank*, 625 So.2d 463 (Fla. 1993) (referring to federal caselaw during a secondary meaning analysis for a Florida common law trademark); *see also Anderson v. Upper Keys Business Group, Inc.*, 61 So.3d 1162 (3rd DCA 2011) (citing Eleventh Circuit caselaw in a secondary meaning analysis); *Tortoise Island Homeowners Assoc., Inc. v. Tortoise Island Realty, Inc.*, 790 So.2d 525 (5th DCA 2001).

Defendant moves to dismiss Counts I, II and III because Plaintiff failed to plead facts that, if taken in the light most favorable to Plaintiff, would be sufficient to show a facially plausible claim that the marks CLAN BELL and CLAN BELL NORTH AMERICA are valid common law marks. The word "Clan Bell" in both marks refers to the surname Bell and the historical Scottish "Clan" of individuals who had this surname. (Doc. 1 at ¶¶ 8-9). The word "North America" in the mark CLAN BELL NORTH AMERICA likely refers to the geographic region in which Plaintiff operates and in which Plaintiff's membership resides. Consequently, the marks CLAN BELL and CLAN BELL NORTH AMERICA are descriptive marks and Plaintiff must establish that both marks have acquired secondary meaning.

### B. The Court should dismiss Counts I-III pertaining to Plaintiff's asserted common law trademarks.

Plaintiff's complaint pleads no facts that, if taken in the light most favorable to Plaintiff (*Newbauer*, 26 F.4th at 934), would establish a facially plausible claim (*Ashcroft*, 556 U.S. at 678) that the common law trademarks CLAN BELL and CLAN BELL NORTH AMERICA have acquired a secondary meaning related to any goods that Plaintiff offers for sale. See *Tana*, 611 F.3d 767, 773 (11th Cir. 2010) (analysis under 15 U.S.C. § 1125(a)); *see also Jysk Bed'N Linen v. Dutta-Roy*, 810 F.3d 767, 778-80 (11th Cir. 2015) (analysis under 15 U.S.C. § 1125(d)); *Great Southern Bank*, 625 So.2d 463 (Fla. 1993) (analysis under Florida common law).

Plaintiff alleges that it offers for sale goods such as "shirts, banners, pewter items (including crest badges), a quaich (drinking bowl for whiskey consumption), pins, magnets, and beach towels." (Doc. 1 at ¶ 20). However, Plaintiff does not plead any facts indicating how long it has used CLAN BELL or CLAN BELL NORTH AMERICA as common law trademarks for its goods, or the nature of extent that it has advertised or promoted those trademarks for its goods, or the degree to which the public recognizes the trademarks or associates them with Plaintiff's goods. *Tana*, 611 F.3d at 776.

### C. The Court should dismiss Counts I-III pertaining to Plaintiff's asserted common law service marks.

The facts pleaded in Plaintiff's complaint, if taken in the light most favorable to Plaintiff (*Newbauer*, 26 F.4th at 934), are insufficient to establish a facially plausible claim (*Ashcroft*, 556 U.S. at 678) that the common law service marks CLAN BELL and CLAN BELL NORTH AMERICA have acquired a secondary meaning related to any services that Plaintiff offers for sale. *See Tana*, 611 F.3d 767, 773 (11th Cir. 2010)(analysis under 15 U.S.C. § 1125(a)); *see also Jysk Bed'N Linen v. Dutta-Roy*, 810 F.3d 767, 778-80 (11th Cir. 2015) (analysis under 15 U.S.C. § 1125(d)); *Great Southern Bank*, 625 So.2d 463 (Fla. 1993)(analysis under Florida common law).

Plaintiff alleges that it offers for sale services that include providing "educational services" (Doc. 1 at ¶ 11), the conducting "historical research" (*id.* at ¶ 12), preserving "historical, literary, and generalized relics of various Bell families and those with Bell surnames worldwide (*id.* at ¶ 13), and "genealogy research" (*id.* at ¶ 14). Regarding the "length and nature of the name's use" (*Tana*, 611 F.3d at 776), Plaintiff pleads that it has used the service marks CLAN BELL and CLAN BELL NORTH AMERICA since at least 2014. (Doc. 1 at ¶ 23).

However, Plaintiff does not plead any facts related to the remaining factors of the Eleventh Circuit's four-factor test. *Tana*, 611 F.3d at 776. Regarding "the nature and extent of advertising and promotion of the name" or "the efforts of the proprietor

14

to promote a conscious connection between the name and the business" (*Tana, 611 F.3d at 776*), Plaintiff merely asserts that it has "has made significant efforts and has expended funds to establish notoriety of" Plaintiff's services and the association of those services with the service marks CLAN BELL and CLAN BELL NORTH AMERICA. (*Id.* at ¶ 24-26). Regarding, "the degree of actual recognition by the public that the name designates the proprietor's service" *Tana, 611 F.3d at 776*, Plaintiff merely asserts that the general public closely associates the service marks CLAN BELL and CLAN BELL NORTH AMERICA with Plaintiff's "high quality and unique services." (Doc. 1 at ¶¶ 24-26). These are conclusory allegations that alone are not sufficient to establish a facially plausible claim that the common law service marks CLAN BELL and CLAN BELL NORTH AMERICA have acquired a secondary meaning.

## CONCLUSION

The Court should dismiss Counts I, II, and III pertaining to Plaintiff's asserted common law trademarks and service marks because Plaintiff did not plead any facts establishing a facially plausible claim that the marks have acquired a secondary meaning. Given that the only marks asserted by Plaintiff are the common law services marks and trademarks CLAN BELL and CLAN BELL NORTH AMERICA, the Court should dismiss Counts I, II, and III in their entirety because no remaining marks are asserted in the complaint.

<table>
<tr><td>Dated: May 22, 2023</td><td>Respectfully submitted,<br><br>/s/ *H. Jared Doster*<br>H. Jared Doster<br>Florida Bar No.1,024,069<br>jared@doster.law<br>support@doster.law<br>**DOSTER LAW PLLC**<br>97 West Oak Avenue, Suite 300<br>Panama City, FL 32401<br>Telephone: (850) 319-4248<br><br>-and-<br><br>James M. Slater<br>Florida Bar No. 111779<br>james@slater.legal<br>**SLATER LEGAL PLLC**<br>113 S. Monroe Street<br>Tallahassee, FL 32301<br>Telephone: (305) 523-9023<br><br>*Attorney for Defendants*</td></tr>
</table>

## **LOCAL RULE 7.1(F) CERTIFICATION OF WORD LIMIT**

Pursuant to N.D. Fla. Local Rule 7.1(F), I certify that this memorandum of law is in compliance with the Court's word limit. According to the word processing program used to prepare this memorandum, the memorandum is less than 3300 words.

/s/ *H. Jared Doster*
H. Jared Doster

**CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on May 22, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send notification of electronic filing to the following counsel of record:

John R. Zoesch III
jrz@beggslane.com
**BEGGS & LANE RLLP**
501 Commendencia Street
Pensacola, FL 32502

*Attorney for Plaintiff*

             /s/ *H. Jared Doster*
             H. Jared Doster