## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**CLAN BELL-CLAN BELL**
**NORTH AMERICA, INC.,**
**a North Carolina corporation,**

     **Plaintiff,**

                               **Case No.: 3:23-cv-04233-TKW-ZCB**

**v.**

**CLAN BELL SOCIETY, INC.,**
**a Florida corporation, and**
**MICHAEL A. BELL,**

     **Defendants.**

_____/

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COUNTS I, II, AND III

     Plaintiff, Clan Bell-Clan Bell North America, Inc. ("Clan Bell"), files this Memorandum in Opposition to Defendants' Joint Motion to Dismiss Counts I, II, and III, Doc. 20, of Plaintiff's Complaint, Doc. 1, and respectfully submits that this Court should deny Defendants' Motion.  In support, Plaintiff states as follows:

## I.    INTRODUCTION

     Defendants, Clan Bell Society, Inc. ("CBS") and Michael A. Bell, move to dismiss Plaintiff's Complaint, contending that the Complaint failed to allege protectable rights in its CLAN BELL and CLAN BELL NORTH AMERICA marks (each a "Mark" and collectively the "Marks").  *See generally* Doc. 20.  Defendants

argue, without merit, that the Complaint does not allege that the Marks are distinctive or have acquired secondary meaning. *Id.* at 8.

The Court should deny Defendants' Motion.  Contrary to Defendants' assertion, the Complaint more than adequately alleges that the Marks are distinctive and protectable under the Rule 12(b)(6) standard.  First, the Complaint alleges that the Marks are inherently distinctive.  Second, the Complaint alleges that the Marks are not merely descriptive of all goods and services that Clan Bell offers.  Third, the Complaint alleges that, to any extent one or more Marks could be considered merely descriptive of one or more goods or services that Clan Bell offers, such Marks have acquired distinctiveness and secondary meaning and are protectable.

Defendants' arguments are evidentiary in nature and do not support a motion to dismiss.  In essence, Defendants make premature summary judgment arguments that would require Plaintiff's Complaint to meet a far higher standard than necessary.  Applicable law governing allegations of distinctiveness and secondary meaning in a complaint supports denial of Defendants' motion to dismiss.

## II.   <u>ALLEGATIONS RELEVANT TO DEFENDANTS' MOTION</u>

Plaintiff Clan Bell is a 501(c)(3) organization with its primary mission the celebration, promotion, and further discovery of the history and heritage of persons who have the surname "Bell" of various spellings throughout the United States and throughout North America.  Compl. ¶ 8.  It provides numerous services in connection

with its mission both to its dues-paying members and to the general public.  *Id.* at ¶ 10.  These services include educational services such as historical and genealogical education, as well as gathering historical information regarding family and nationality migration histories, health, heritage, and connectivity in furtherance of its educational mission.  *Id.* at ¶¶ 11-12.  Clan Bell collects and preserves historical, literary, and generalized relics of the various Bell families and those with Bell surnames worldwide, in some instances encompassing as far back as historical records will allow.  *Id*. at ¶ 13.  Further to these efforts, Clan Bell conducts genealogy research.  *Id.* at ¶ 14.  It collects, compiles, and makes genealogical and related DNA data available both to its members and researchers to better understand inter-family relationships and the possible related medical issues such research might yield.  *Id.*

In addition to its educational and research services, Clan Bell seeks to build relationships by sharing and perpetuating national and family traditions among its members.  *Id.* at ¶ 15.  It does so by participating in numerous festivals and games throughout the United States and North America under the "Clan Bell" name where it operates and hosts "Clan Bell" tents, provides information and fraternal fellowship, uses and displays various banners, logos, handouts, and participates in various games and activities.  *Id.* at ¶ 16.   Clan Bell promotes its services via its website, located at https://www.clanbell.org, and via its Facebook page, located at https://www.facebook.com/ClanBell/.  *Id.* at ¶ 17.  Clan Bell previously hosted and

had exclusive administrative control of a Facebook group page called "Clan Bell," located at https://www.facebook.com/groups/ClanBell/, where members and the general public could read, view, and post information, updates, news, and photos for viewing by the group at large and learn about the operations and services of Clan Bell, and much more. *Id.* at ¶ 18. Clan Bell distributes a quarterly newsletter by mail and e-mail. *Id.* at ¶ 19. Clan Bell also offers goods bearing the "Clan Bell" name for sale, including via its website and at events and festivals. *Id.* at ¶ 20.

In connection with the services it provides, Plaintiff owns the exclusive right to use, and uses in commerce, the Marks.[1] *Id.* at ¶ 21. Clan Bell displays the Marks prominently in numerous ways, including but not limited to on its website, its Facebook page, previously on the Facebook Group Page, in its newsletters, on its literature which is disseminated to members and non-members, on tents at festivals and in games, and in other ways. *Id.* Since its inception in 2014, Plaintiff has offered numerous services in interstate commerce under the Marks, including the above-described services. *Id.* at ¶ 23. Prior to that time, a California entity, Clan Bell International Ltd., which had many of the same board members, provided the same services continuously under the CLAN BELL name since at least 2004. *Id.*

---

[1] Clan Bell has filed applications for the registration of certain of its Marks with the United States Patent and Trademark Office. *Id.* at ¶ 22.

Plaintiff owns and has the exclusive right to use the Marks in connection with its services and goods. *Id.* at ¶¶ 20, 27. Plaintiff owns all rights, title, and interest in and to the Marks as used in connection with its services and goods. *Id.* As a result of Clan Bell's promotion of its services and goods, the Marks have become closely associated with Clan Bell's high quality and unique services. *Id.* at ¶¶ 20, 24. Plaintiff has made significant efforts and has expended funds to establish the notoriety of the Marks as well as the services offered thereunder. *Id.* at ¶ 25. As a result of Clan Bell's longstanding and widespread use and promotion of services in connection with the Marks, consumers and the public closely associate the Marks with Clan Bell's services. *Id.* at ¶ 26. Plaintiff's Marks are held in high regard and rely on Plaintiff's reputation, as embodied in Plaintiff's Marks, receiving the benefit of Plaintiff's services offered in association with the Marks. *Id.*

Defendant Michael A. Bell and former Clan Bell President David Bell formed Defendant Clan Bell Society, Inc. effective January 1, 2020, shortly after their terminations from Clan Bell. *Id.* at ¶ 26. Among other infringing acts, Defendant CBS (or a party under CBS's control) registered the infringing domain name https://clanbellsociety.org. *Id.* at ¶ 31. Since 2020, CBS has operated a website at that infringing domain name under the infringing name or mark "Clan Bell Society," on which CBS sells memberships to CBS, advertises CBS's participation at various festivals and events, displays photographs of tents bearing

the "Clan Bell" name, provides information regarding family history and genealogy, and sells branded products. *Id.* CBS's conduct has caused actual confusion, including by causing Clan Bell to be excluded from events and festivals due to the confusing similarity of the parties' names. *Id.* at ¶¶ 32. Defendant CBS has intentionally promoted itself under identical or confusingly similar marks to Plaintiff's Marks. *Id.* at ¶¶ 35, 38-40.

## III.   ARGUMENT

Defendants center their entire argument on Plaintiff's alleged failure to plead secondary meaning sufficient to state a claim under Counts I, II, and III. But substantively, Defendants' motion relies heavily on decisions addressing the sufficiency of evidence at the summary judgment and trial stage. Defendants would have this Court resolve factual disputes on a motion to dismiss, which is improper. To the contrary, Plaintiff's Complaint contains more than sufficient factual allegations to state plausible claims for relief under the pleaded causes of action. The Court should deny Defendants' Motion to Dismiss.

### A.   Standard of Law Under Rule 12(b)(6)

In reviewing a motion to dismiss under Rule 12(b)(6), a court must "accept as true all facts stated in the complaint and all reasonable inferences drawn therefrom." *Jackson v. Okaloosa Cty., Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A complaint must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* at 677-78 (quoting Fed. R. Civ. P. 8(a)(2)). A complaint "does not need detailed factual allegations"; it only requires allegations that are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. In a trademark action, "[a] motion to dismiss is not the proper vehicle to engage in a fact-specific analysis; the Court has been tasked with testing the sufficiency of the pleading, not the sufficiency of facts the parties have not yet been able to develop through discovery." *Naples Screen Repair, LLC v. Arrow Handyman "LLC"*, Case No. 2:20-cv-844-FtM-SPC-NPM, 2021 WL 75124, at *2 (M.D. Fla. Jan. 9, 2021).

### B.    Causes of Action Alleged by Plaintiff in Counts I, II, and III

Defendants' motion takes issue with three causes of action pleaded by Plaintiff in the Complaint, including violation of the Anti-Cybersquatting Protection Act, 15 U.S.C. § 1125(d) ("ACPA"), federal unfair competition under 15 U.S.C. § 1125(a), and unfair competition under Florida law. All three causes of action stem from the concepts of trademark law as most aptly stated in the Lanham Act.

Section 43(a) of the Lanham Act establishes "a federal cause of action for unfair competition by prohibiting the use in interstate commerce of any 'word, term,

name, symbol, or device, . . . or any false designation of origin . . . which is likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a).  To set forth a prima facie case of trademark infringement or unfair competition under the Lanham Act, "a plaintiff must show (1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Tana v. Dantanna's*, 611 F.3d 767, 773 (11th Cir. 2010).  To satisfy the first element, "a plaintiff need not have a registered mark." *Id.*  Rather, a defendant's use of a plaintiff's unregistered mark can violate Section 43(a) where the use "constitutes a false representation that its goods came from the same source." *Id.*

The ACPA provides a cause of action to the owner of a "mark, including a personal name which is protected as a mark under this section," against a party who has "a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section" and "registers, traffics in, or uses a domain name" that is identical to, confusingly similar to, or dilutive of that mark.  15 U.S.C. § 1125(d)(1)(A).  In accordance with Eleventh Circuit precedent, a plaintiff pleading a violation of the ACPA must prove that: "(1) its mark is distinctive or famous and entitled to protection; (2) the defendant's domain name is identical or confusingly similar to the plaintiff's mark; and (3) the defendant registered or used the domain

name with a bad faith intent to profit." *Bavaro Palace, S.A. v. Vacation Tours, Inc.*, 203 F. App'x 252, 256 (11th Cir. 2006) (citation omitted).

## C.   Plaintiff's Complaint Sufficiently Alleges Secondary Meaning

The Complaint adequately alleges facts sufficient to show that Plaintiff's Marks "are capable of distinguishing [Plaintiff's] goods [and services] from those of others." *Tana v. Dantanna's*, 611 F.3d 767, 773 (11th Cir. 2010).  In their Motion to Dismiss, Defendants argue only that the Court should dismiss Counts I, II, and III because they claim, without merit, that: (1) the Marks are "descriptive marks"; and (2) the Complaint fails to plead facts sufficient to state a claim that the Marks have acquired "secondary meaning."   As Plaintiff argues in Section III.D below, Plaintiff's Marks are not "*merely* descriptive," which is the Lanham Act's standard. Yet, even if the Court assumes for purposes of this Motion that Plaintiff's Marks are merely descriptive, Plaintiff has pleaded sufficient facts in its Complaint to allege acquired distinctiveness of the Marks sufficient to state claims for relief.

Marks vary in strength across the "spectrum of distinctiveness": (1) generic; (2) merely descriptive (*i.e.,* "marks that identify the characteristic or quality of a product or service"); (3) suggestive (*i.e.,* "marks that suggest characteristics of the product or service but require an effort of the imagination by the consumer in order to be understood as descriptive"); and (4) arbitrary or fanciful. *Dantanna's*, 611 F.3d at 774.  Suggestive, arbitrary, and fanciful marks are "inherently distinctive"

9

and entitled to trademark protection. *Id.* Even if a mark on its face "merely" describes all relevant goods and services (*i.e.*, requires no imagination, thought, or perception to reach a conclusion as to the nature of the goods and services), it nevertheless "may become sufficiently distinctive to enjoy trademark protection" by acquiring "secondary meaning" where the mark is recognized as having a source-indicating function to identify the source of the goods or services, meaning, "when the primary significance of the term in the minds of the consuming public is not the product but the producer." *Id.*; *see also Gulf Coast Commer. Corp. v. Gordon River Hotel Assoc.*, 508 F. Supp. 2d 1157, 1163 (M.D. Fla. 2007) ("Marks that are merely descriptive or primarily geographically descriptive under 15 U.S.C. § 1052(e) . . . may be registered if the applicant shows that the mark has acquired secondary meaning under 15 U.S.C. § 1052(e)(1), (f).").

The Eleventh Circuit assesses secondary meaning by considering four factors: (1) the length and nature of the mark's use; (2) the nature and extent of advertising and promotion of the mark; (3) the efforts made by the owner to promote a conscious connection between the mark and the business; and (4) the degree of actual recognition by the public that the name designates the owner's product or service. *See Dantanna's*, 611 F.3d at 776. "Both the distinctiveness categorization and the existence of a secondary meaning are questions of fact . . .." *Coach House Rest., Inc. v. Coach & Six Restaurants, Inc.*, 934 F.2d 1551, 1560 (11th Cir. 1991).

### 1.   Defendants' Cited Cases Do Not Support Their Motion

Defendants do not support their argument with relevant case law.  Rather, every case they cite involved either summary judgment motions or post-trial relief, and are distinguishable.  For example, the *Dantanna's* case, was decided on summary judgment.  *See* 611 F.3d at 774.  There, the Eleventh Circuit did not find that the asserted mark Dan Tana's lacked distinctiveness, but rather decided the case on likelihood of confusion grounds.  *See id.*  The case of *Investacorp Inc. v. Arabian Inv. Banking Corp.*, 931 F.2d 1519 (11th Cir. 1991), was also decided on summary judgment.  Defendants cite no case granting a motion to dismiss due to a lack of secondary meaning.

Indeed, several other cases cited by Defendants involved the denial of summary judgment due to a factual dispute regarding secondary meaning, *see D.H. Pace Co. v. Aaron Overhead Door Atlanta LLC*, Civil Action File No. 1:17-CV-3430-MHC, 2020 U.S. Dist. LEXIS 256899 (N.D. Ga. Feb. 12, 2020) (finding a genuine issue of material fact), and the remand of proceedings for additional fact-finding on the issue, *see Great So. Bank v. First So. Bank*, 625 So. 2d 463 (Fla. 1993), *Anderson v. Upper Keys Bus. Group, Inc.*, 61 So. 3d 1162 (Fla. 3d DCA).  And, the case of *Tortoise Island Homeowners Ass'n v. Tortoise Island Realty*, 790 So. 2d 525 (Fla. 5th DCA), found that an allegedly descriptive mark was actually inherently distinctive and did not require proof of secondary meaning.  *Id.* at 535.

11

Finally, Defendants cite the Eleventh Circuit case of *Jysk Bed'N Linen v. Dutta-Roy*, 810 F.3d 767 (11th Cir. 2015).  But this case actually supports Plaintiff's claim.  The Eleventh Circuit found that even if the plaintiff's asserted marks were "merely descriptive" of the products, Jsyk's use of those marks for more than five years meant that the marks had acquired secondary meaning and were therefore distinctive prior to the defendant's registration of its infringing domain name.  *See id.* at 779; *see also* 15 U.S.C. § 1052(f) (providing that proof of substantially exclusive and continuous use of a designation as a mark by an applicant in commerce for five years before the date on which the claim of distinctiveness is made may be accepted as prima facie evidence that the mark has acquired distinctiveness).

### 2. Relevant Case Precedent Supports Denying Defendants' Motions to Dismiss

The issue on this motion is not whether Plaintiff has presented sufficient evidence to create an issue of material fact, but whether Plaintiff has pleaded sufficient allegations in its Complaint.  Florida federal district courts have routinely denied motions to dismiss in the face of similar arguments to those made by Defendants.  For example, the Southern District of Florida analyzed a plaintiff's complaint against arguments that it contained only "conclusory allegations as to secondary meaning."  *Bluewater Key RV Ownership Park Prop. Owners Assoc. Inc. v. Clark*, Case No. 15-10060-CIV-GOODMAN, 2016 WL 4761853, at *7 (S.D. Fla. Sept. 12, 2016).  The plaintiff's factual allegations included its duration of use as

well as allegations that it used its trademarks "continuously and exclusively" and operated a website including its trademarks. *Id.* The plaintiff alleged that it spent a "considerable amount of resources, time, and effort marketing and promoting" its trademarks, including through its Facebook page and Twitter account. *Id.* It further claimed that this led to its marks having "widespread recognition with the consuming public" such that the public would "identify services affiliated with Plaintiff." *Id.*

The *Clark* court denied the defendant's motion to dismiss. *Id.* It held that the plaintiff had alleged enough facts to support secondary meaning, namely the duration of use and the promotion of the marks on its website and through social media. *Id.* The *Clark* court held that the facts alleged provided a plausible basis for secondary meaning to support a finding of distinctiveness. *Id.*

In a more recent case, the Middle District of Florida denied a motion to dismiss alleging the failure to allege a distinctive mark. *See Naples Screen Repair, LLC*, 2021 WL 75124, at *4. There, the plaintiff alleged continued and uninterrupted use of a particular duration, along with its use of the mark in connection with the business through online advertising, business cards, and service vehicles. *Id.* It also alleged that it had achieved "favorable public acceptance and recognition through high quality services and good will," and that it had capitalized on its mark." *Id.* This sufficed for a finding of plausible secondary meaning. *Id.*

In *IT Strategies Group, Inc. v. Allday Consulting Group, LLC,* No. 13-60014-Civ-Scola, 2014 WL 11531625 (S.D. Fla. July 17, 2014), the court denied a motion to dismiss where the defendants argued that the plaintiff failed to allege that the plaintiff's descriptive mark had acquired "secondary meaning" by name. *Id.* at *2. The court acknowledged the absence of the term "secondary meaning" in the complaint but advised that "magic words are not required." *Id.* Instead, the court relied on multiple allegations that the mark had "acquired" distinctiveness due to the plaintiff's efforts. *Id.* It also relied on factual allegations such as "how long the trademark has been used" and allegations in the complaint regarding "the extent of the advertising and promotion of the trademark." *Id.* Thus, although apparently far from extravagant or detailed, the court held that the complaint's "allegations [we]re sufficient to pass the pleading burden of Rule 8(a)." *Id.*

Beyond Florida and the Eleventh Circuit, the case of *YETI Coolers, LLC v. Imagen Brands, LLC*, No. 1:16-CV-00578-RP, 2017 WL 2199012 (W.D. Tex. May 18, 2017), offers guidance as well. Although in the context of trade dress, it nonetheless dealt with the same issue of secondary meaning and the pleading required therefor. *Id.* at *6. The court summarized the relevant allegations:

> While Defendants argue that Plaintiff has offered no more than conclusory assertions of secondary meaning, the Court finds that Plaintiff's allegations suffice to give Defendants notice of the basis for its claim of secondary meaning. In addition to asserting that Plaintiff "has extensively and continuously promoted and used its designs for years in the United States and Texas," the Complaint alleges that the

14

company "has enjoyed significant sales of the tumblers"; and that, "as a result of Plaintiff's exclusive, continuous and substantial use, advertising, and sales of insulated drinkware products bearing Plaintiff's Trade Dress, and the publicity and attention that has been paid to Plaintiff's Trade Dress, Plaintiff's Trade Dress has become famous and have acquired valuable goodwill and substantial secondary meaning in the marketplace."  Taken together and assumed to be true, these factual allegations support an inference that the public has been exposed to the Plaintiff's trade dress to identify it with Plaintiff as the source of the goods.

*Id.  See also Royal Palm Props., LLC v. Premier Estate Props., Inc.*, No. 10-80232-CV, 2010 WL 1524720, at *2 (S.D. Fla. Apr. 15, 2010) ("Plaintiff has pled more than conclusory allegations regarding the factors necessary to show secondary meaning."); *T-12 Enter., LLC v. Young Kings Enter., Inc.*, 36 F. Supp. 3d 1380, 1390 (N.D. Ga. Aug. 11, 2014) ("But even if it is a merely descriptive mark, T-12 alleges that it has acquired secondary meaning.  Thus, the well-pleaded facts, when accepted as true, show that *I Plead the 5th* may be protected by § 43(a).").

### 3.    Plaintiff's Allegations in the First Amended Complaint Meet Rule 8(a)'s Pleading Requirement

Under this precedent, Plaintiff has alleged ample facts to support a plausible finding of secondary meaning under the factors followed by the Eleventh Circuit. Plaintiff's Complaint includes more factual detail than relied on by the courts in the above-cited cases.  Plaintiff alleges that it began using its CLAN BELL and CLAN BELL NORTH AMERICA Marks at least as early as 2014, Doc. 1 ¶¶ 21-23, whereas Defendant CBS's first use did not occur until 2020, *id.* at ¶ 31.  Plaintiff

15

further alleges that it has continuously used the Mark ever since through a variety of platforms, both online, through distribution, and in-person.  Doc. 1 ¶¶ 17, 20-21. This amounts to approximately six years of exclusive use by Plaintiff prior to Defendants' initial use (and nine years total), which supports the plausibility of Plaintiff's claims that the Marks are inherently distinctive or have acquired distinctiveness and secondary meaning.  For one thing, it exceeds the five-year period of use established by Section 1052(f) of the Lanham Act as "prima facie evidence that the mark as become distinctive" for purposes of trademark registration."  15 U.S.C. § 1152(f); *see also Jysk Bed'N Linen*, 810 F.3d at 779 (holding that use of marks for more than five years meant that the marks had acquired secondary meaning and were distinctive).

Furthermore, the Eleventh Circuit has noted that "there is no fixed rule as to the length of time a symbol must be in use before it can achieve secondary meaning," even noting that Section 1052(f)'s five-year period does not establish a minimum time period.  *FN Herstal SA v. Clyde Armory Inc.*, 838 F.3d 1071, 1084 (11th Cir. 2016) (quoting 2 McCarthy on Trademarks § 15:54).  Rather, "the time necessary to acquire secondary meaning 'may be quite short.'"  *Id.* (quoting *Noma Lites, Inc. v. Lawn Spray, Inc.*, and noting that the Second Circuit has found secondary meaning based on 11 months of use).  In *FN Herstal SA*, it found that a two-year period of use sufficed to establish secondary meaning.  *Id.*  Thus, in the current procedural

posture, this Court can find that a period of (at minimum) approximately six years of prior use is more than sufficient to establish the plausibility of secondary meaning.

Plaintiff also alleges significant promotion of its services and goods in connection with the Mark.  Plaintiff alleges that it displays the Mark prominently on all platforms where it provides services, including on its website, Facebook page, and newsletters, as well in person at festivals and events.  Doc. 1 ¶¶ 17, 20-21.

Defendants take issue with Plaintiff's allegations regarding its efforts and expenditure of funds to establish the notoriety of its services and goods and the association with its Marks, and Plaintiff's asserting that its members and the public closely associate its Marks with its services and goods, calling them "conclusory." Mot. at 15.  Yet, as explained above, Defendants cite no cases requiring such specificity of allegations at motion to dismiss stage.  Plaintiff's allegations regarding the nature and extent of advertising and promotion meet the relevant standard.

Moreover, Plaintiff has adequately alleged that relevant consumers, including its members and the public, associate the Mark with Plaintiff and its services and goods.  Doc. 1 ¶¶ 9, 16-21, 23-27.  Plaintiff's allegations are at least as specific as those in *Clark*, where the court denied a motion to dismiss.  As in *Yeti Coolers, LLC*, "[t]aken together and assumed to be true, these factual allegations support an inference that the public has been exposed to the Plaintiff's [Marks] to identify [them] with Plaintiff as the source of the [services.]"  2017 WL 2199012, at *6.

17

Plaintiff's allegations of actual confusion further bolsters its secondary meaning argument.  Doc. 1 ¶ 32.  "Instances of consumer confusion are probative of secondary meaning because they tend to show that the relevant purchasing public associates the product with plaintiff."  *GamerModz, LLC*, 2011 WL4755026, at *15 ("Also supporting the plaintiff's contention that its mark had developed secondary meaning is evidence of consumer confusion.").  These allegations provide additional support for Plaintiff's claim that secondary meaning existed prior to CBS's initial use.   *See GamerModz, LLC*, 2011 WL4755026, at *15 (noting that such circumstances gave rise to a genuine dispute of fact regarding secondary meaning).

Plaintiff also alleged willful, knowing, and intentional infringement by Defendants, specifically contending that Defendants knew of Plaintiff's Marks by virtue of Defendant Michael Bell's prior roles with Plaintiff.  Doc. 1 ¶ 37.  This further supports a finding of secondary meaning.  *See FN Herstal SA*, 838 F.3d at 1086 (finding that the fact that the defendant "intentionally copied" the plaintiff mark supported the existence of secondary meaning); *YETI Coolers, LLC*, 2017 WL 2199012, at *6 (holding that on a motion to dismiss, a complaint's allegation of "intentional, willful, and malicious" use of a mark "bolsters Plaintiff's secondary meaning argument").  That Michael Bell and another founder of CBS were terminated from Plaintiff due to misconduct, only to establish a competing

18

organization confusingly similar to Plaintiff's Marks a few months later, provides further support for this point.

Therefore, at minimum, Plaintiff has alleged that its Marks are enforceable because they have acquired distinctiveness through secondary meaning even if the Court were to assume (as Defendants argue) that the Marks are merely descriptive.

### D.    Plaintiff's Marks are Not Merely Descriptive

Plaintiff's Complaint also passes muster under Rule 8(a) because Plaintiff pleads inherently distinctive Marks that are at least suggestive, and are not merely descriptive of Plaintiff's services (which include educational, historical research, genealogical research, and association services, among others) and goods (which include numerous products such as, *inter alia*, clothing, banners, pewter items including crest badges, pins, cups, magnets, and beach towels).   Doc. 1 ¶ 20. Defendants argue, without merit, that the Marks are descriptive because they include a surname ("Bell") and a geographic reference ("North America").   Nowhere do Defendants explain how the Marks are merely descriptive *of the services and goods offered by Plaintiff*, and that the Marks have not acquired any second meaning and are not "capable of distinguishing [Plaintiff's] goods [and services] from those of others," however.  *Dantanna's*, 611 F.3d at 773.  This is key, because the distinctions between the categories of marks depends "on the relationship between the name and

the service or good it describes." *Frehling Enters. v. Int'l Select Group, Inc.*, 192
F.3d 1330, 1335 (11th Cir. 1999).

A "distinctive" trademark serves the purpose of "identifying the *source* of
goods and services, not just the goods and services themselves." *Engineered Tax
Svs., Inc. v. Scarpello Consulting, Inc.*, 958 F.3d 1323, 1327 (11th Cir. 2020)
(emphasis in original) (quotation omitted).  "A mark can be 'distinctive' in one of
two ways: it can be 'inherently' distinctive, or it can 'acquire' distinctiveness over
time."  *Id.*  "Whether a mark has either inherent or acquired distinctiveness is a
question of fact."  *Id.*  "Suggestive terms suggest characteristics of the goods and
services and require and effort of the imagination by the consumer in order to be
understood as descriptive." *Frehling Enters.*, 192 F.3d at 1335.  "A suggestive mark
is entitled to protection against infringement under the trademark laws." *Tancogne
v. Tomjai Enters. Corp.*, 408 F. Supp. 2d 1237, 1245 (S.D. Fla. 2005).

In *Frehling*, the Eleventh Circuit found that the mark "OGGETTI" (which
means "objects" in Italian) was suggestive rather than merely descriptive.  192 F.3d
at 1336.  Thus, although it technically described products produced by the plaintiff
in the broadest sense, as a mark, it suggested or described "a significant number of
products" produced by the plaintiff, and thus met the "suggestive" standard.  *Id. See
also Equine Tech., Inc. v. Equitechnology, Inc.*, 68 F.3d 542, 544 (1st Cir. 1995)
(holding that the term "Equine Technologies" was not merely descriptive of the

plaintiff's product, hoof pads for horses, despite the term "equine" describing horses and the term "technologies" encompassing hoof pads).

"The combination of two or more descriptive words as a composite mark may result in a suggestive term." *Tancogne v. Tmjai Enters. Corp.*, 408 F. Supp. 2d 1237, 1244 (S.D. Fla. 2005); *USA Nutraceuticals Group, Inc. v. BPI Sports, LLC*, 165 F Supp. 3d 1256, 1269 (S.D. Fla. 2016).   Thus, in certain instances, words that are individually descriptive on their own become suggestive when combined, "since the combination evoke[s] more than just a description." *Tancogne*, 408 F. Supp. 2d at 1244.   In *BPI Sports*, the court found that the mark "Be Better Be Stronger" required "a leap of the imagination to from the mark's references to the dietary and nutritional products bearing the mark."  165 F. Supp. 3d at 1269.  It found the mark suggestive because the terms did not describe ingredients of the products or their quality, but rather merely suggested the product's intended effects.  *Id.*

Here, neither of Defendants' Marks are merely descriptive.  Neither the Mark CLAN BELL nor CLAN BELL NORTH AMERICA "identify the characteristic or quality of [Plaintiff's] product or service" as the law requires for a merely descriptive mark.  *See Dantanna's*, 611 F.3d at 774.  Put more bluntly, neither term describes the services or goods asserted by Plaintiff in this case.  *See Citibank, N.A. v. Citibanc Grp., Inc.*, 724 F.2d 1540, 1545 ("The term 'Citi' does not describe a class of banking services or a characteristic of banking services.").

Although one connotation of "Bell" is a surname, as an element within the Marks it functions in combination with the term "CLAN" and also the term "NORTH AMERICA" to create Plaintiff's Marks CLAN BELL and CLAN BELL NORTH AMERICA, which identify and distinguish Plaintiff's goods and services and identify Plaintiff as the source of those goods and services. Plaintiff's unitary composite Marks are not merely descriptive or primarily merely a surname, as they combine to create a unitary whole of a mark that does not merely describe the services or goods offered by Plaintiff, and instead are "capable of distinguishing [Plaintiff's] goods [and services] from those of others." *Tana*, 611 F.3d at 773.  Moreover, although the Mark "CLAN BELL NORTH AMERICA" contains a term with vague geographic connotations (North America, the world's third-largest continent containing multiple countries, dependencies, and other territories), this does not render the entirety of that unitary Mark *primarily* geographically descriptive.  *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 486 (5th Cir. 1971) (noting that when evaluating geographic descriptiveness, "[t]he word 'primarily' should not be overlooked").

Plaintiff does not contend that the Court must make a finding that its asserted Marks are suggestive at this early stage of the litigation.  Rather, that is a fact-sensitive question that the Court will address at a later time when presented with evidence.  But the Court should also not accept Defendants' contention that the

Marks are merely descriptive at this early stage of the litigation either, despite the fact that Plaintiff's allegations of secondary meaning overcome such argument.

## IV.   <u>CONCLUSION</u>

For the reasons set forth herein, Plaintiff Clan Bell-Clan Bell North America, Inc. respectfully requests that the Court deny Defendants' Motion to Dismiss. Alternatively, if the Court finds that certain allegations require additional factual pleading, Plaintiff would respectfully request leave to amend to allege additional details and facts on those specific points.  But as demonstrated herein, Plaintiff has pleaded more than necessary facts to defeat Defendants' motion, and thus Plaintiff's Complaint should not require amendment.

*/s/ John R. Zoesch III*
**JOHN R. ZOESCH III**
Fla. Bar No.:  45257
jrz@beggslane.com
**STEPHEN D. WILSON**
Florida Bar No. 1010484
sdw@beggslane.com
**BEGGS & LANE, RLLP**
501 Commendencia Street
Pensacola, Florida 32502
T:  (850) 432-2451
F:  (850) 469-3331
*Attorneys for Plaintiff Clan Bell-Clan Bell North America, Inc.*

## <u>CERTIFICATE OF COMPLIANCE WITH WORD LIMIT</u><br><u>REQUIREMENT OF LOCAL RULE 7.1(F)</u>

Pursuant to Local Rule 7.1(F), the undersigned certifies that this memorandum contains 5,477 words, including headings, footnotes, and quotations, but not including the case style, signature block, or any certificate of service.

*****

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 9th day of June, 2023, a true and correct copy of the foregoing has been furnished via electronic mail through the CM/ECF System for the Northern District of Florida, which will send notice of the electronic filing to all counsel of record.

*/s/ John R. Zoesch III*
_____
**JOHN R. ZOESCH III**
Florida Bar No. 0045257