UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**CLAN BELL-CLAN BELL NORTH AMERICA, INC.**,

Plaintiff,

v.   Case No. 3:23cv4233-TKW-ZCB

**CLAN BELL SOCIETY, INC.** and **MICHAEL A. BELL**,

Defendants.
_____/

## ORDER DENYING MOTION TO DISMISS

This case is before the Court based on Defendants' motion to dismiss Counts I through III of Plaintiff's complaint (Doc. 20). Upon due consideration of the motion, Plaintiff's response in opposition (Doc. 25), and the complaint (Doc. 1), the Court finds that the motion is due to be denied.

### Background

Plaintiff and Defendant Clan Bell Society, Inc. (CBS) are both nonprofit organizations dedicated to the history and heritage of persons who have the surname "Bell." Both organizations use the marks CLAN BELL and CLAN BELL NORTH AMERICA in connection with the services they offer.

Plaintiff claims that it owns the exclusive right to use the marks in connection with its services, and in February 2023, Plaintiff filed applications for the registration of the marks with the U.S. Patent and Trademark Office (USPTO).[1]

Plaintiff features the marks prominently on its website (clanbell.org) and on social media, in its newsletters and other literature, at games and festivals, and on various goods it sells. Plaintiff alleges that it has continuously used the marks in connection with its services since its inception in 2014 and that its predecessor organizations had used the marks in the United States since at least 2004. Plaintiff further alleges that the marks have generated substantial goodwill and customer recognition because of its efforts and that consumers closely associate the marks with Plaintiff's services.

Defendant Michael A. Bell was a member of Plaintiff's organization until October 2019 when his membership was terminated by Plaintiff. Thereafter, Mr. Bell and others formed CBS. Mr. Bell is the president of CBS.

Since 2020, CBS has operated a website (clanbellsociety.org) through which CBS sells memberships, advertises its participation at various events, displays photographs bearing the CLAN BELL name, provides historical and genealogical information, and sells various branded products. Defendants have also allegedly

---

[1] The USPTO's online Trademark Status and Document Retrieval System (tsdr.uspto.gov) reflects that the applications have not yet been assigned to an examining attorney for review.

taken over Plaintiff's Facebook group page, excluded Plaintiff's officers and directors from accessing the page, and used the page to denigrate Plaintiff and promote CBS.

Plaintiff alleges that Defendants' actions have caused it to be excluded from events, harmed its reputation and goodwill, and caused it financial injury by diverting potential consumers by misleading them and creating confusion regarding the source of the services being provided.

Plaintiff file suit against Defendants in this Court in February 2023.  The complaint asserts four counts:  violation of the Anti-Cybersquatting Protection Act (ACPA), 15 U.S.C. §1125(d), against CBS with respect to the clanbellsociety.org domain name (Count I); unfair competition in violation of the Lanham Act, 15 U.S.C. §1125(a), against both Defendants based on infringement of Plaintiff's marks (Count II); unfair competition in violation of Florida law against CBS based on infringement of Plaintiff's marks (Count III); and conversion against both Defendants for taking over Plaintiff's Facebook group page (Count IV).

Defendants responded to the complaint with a motion to dismiss Counts I through III for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  The motion is fully briefed and ripe for a ruling.  No hearing is needed to rule on the motion.

**Standard of Review**

When reviewing a motion to dismiss under Rule 12(b)(6), "the Court must view the allegations of the complaint in the light most favorable to Plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom." *Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1247 (11th Cir. 2003). To survive such a motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Detailed factual allegations" are not required, but the complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

**Analysis**

Defendants argue that Counts I through III should be dismissed for failure to state a claim because Plaintiff has not plausibly alleged that it had a "distinctive" (and therefore protectable) mark through which to assert those claims. More specifically, Defendants argue that CLAN BELL and CLAN BELL NORTH AMERICA are not distinctive marks because they are merely "descriptive" and Plaintiff has not shown that the marks have acquired "secondary meaning." Plaintiff

4

responds that the marks are "suggestive" (and, thus, inherently distinctive and entitled to trademark protection), but that even if the marks are considered to be "descriptive," the complaint plausibly alleges that the marks are distinctive because they have acquired "secondary meaning."

A plaintiff is not required to register its mark with the USPTO to have enforceable trademark rights. *See Tana v. Dantanna's*, 611 F.3d 767, 773 (11th Cir. 2010). The use of an unregistered mark can still violate the Lanham Act "where the alleged unregistered trademarks used by the plaintiff are so associated with its goods that the use of the same or similar marks by another company constitutes a false representation that its goods came from the same source." *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1512-13 (11th Cir. 1984) (cleaned up). However, "only those marks that are capable of distinguishing the owner's goods from those of others, i.e., that are sufficiently 'distinctive,' are eligible for … protection as common law marks under the Lanham Act." *Tana*, 611 F.3d at 773; *see also Jysk Bed'N Linen v. Dutta-Roy*, 810 F.3d 767, 778 (11th Cir. 2015) (explaining that an ACPA claim requires a showing that the challenged domain name was a distinctive mark at the time the domain name was registered); *Great Southern Bank v. First Southern Bank*, 625 So. 2d 463, 466-67 (Fla. 1993) (applying the federal distinctiveness analysis to state law trademark claims).

The Eleventh Circuit has recognized four categories of distinctiveness:

> (1) generic—marks that suggest the basic nature of the product or service; (2) descriptive—marks that identify the characteristic or quality of a product or service; (3) suggestive—marks that suggest characteristics of the product or service and require an effort of the imagination by the consumer in order to be understood as descriptive; and (4) arbitrary or fanciful—marks that bear no relationship to the product or service, and the strongest category of trademarks.

*Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 797-98 (11th Cir. 2003). "The demarcation between each category is more blurred than it is definite." *Investacorp, Inc. v. Arabian Inv. Banking Corp.*, 931 F.2d 1519, 1522 (11th Cir. 1991).

Here, although the marks appear more "suggestive" than "descriptive" because it is not apparent (at least to the Court) from the marks what products or services they describe, the Court need not decide at this stage of the case which category the marks fall into. Suffice it to say, the Court agrees with Plaintiff that even if the marks are descriptive, the complaint plausibly alleges that they have acquired the requisite "secondary meaning" to make them distinctive.

A descriptive mark only becomes distinctive enough to acquire trademark protection when it acquires "secondary meaning," which is when "the primary significance of the term in the minds of the consuming public is not the product but the producer." *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1358 (11th Cir. 2007) (cleaned up) (quoting *Am. Television & Commc'ns Corp. v. Am. Commc'ns &*

*Television, Inc.*, 810 F.2d 1546, 1548-49 (11th Cir. 1987)).  Courts consider four factors in determining whether a descriptive mark has acquired secondary meaning:

> 1) the length and manner of [the mark's] use; 2) the nature and extent of advertising and promotion; 3) the efforts made by plaintiff to promote a conscious connection in the public's mind between the name and plaintiff's business; and 4) the extent to which the public actually identifies the name with plaintiff's goods and services.

*Gift of Learning Found.*, 329 F.3d at 800.  The fourth factor is generally the most important.  *See Tropic Ocean Airways, Inc. v. Floyd*, 598 F. App'x 608, 612 (11th Cir. 2014).

At the motion to dismiss stage, the Court's task is to "determine whether Plaintiff has sufficiently alleged that its [marks] acquired secondary meaning, not whether Plaintiff's [marks] ha[ve], in fact, acquired secondary meaning."  *Cornell Pump Co. v. Thompson Pump & Mfg. Co.*, 2018 WL 3827249, at *7 (M.D. Fla. May 18, 2018) (citing *Tropic Ocean Airways*, 598 F. App'x at 611).  Here, the Court agrees with Plaintiff that the complaint includes sufficient factual allegations as to each of the four secondary meaning factors.

With respect to the first factor, the complaint alleges that Plaintiff has continuously used the marks since its inception in 2014 to promote its services and that Plaintiff's predecessor organizations did so since at least 2004.  *See* Doc. 1 at ¶23. With respect to the second factor, the complaint alleges that Plaintiff promotes its services by featuring the marks prominently online and on social media, on

7

mailed and emailed literature, and at festivals and other events. *Id.* at ¶¶16-21. With respect to the third factor, the complaint alleges that "Plaintiff has made significant efforts and has expended funds to establish the notoriety of the [m]arks as well as the services offered thereunder." *Id.* at ¶25. And, with respect to the fourth factor, the complaint alleges that as a result of Plaintiff's efforts, "consumers and the public closely associate the [m]arks with [Plaintiff's] services." *Id.* at ¶26; *see also id.* at ¶24 ("[T]he [m]arks have become closely associated with [Plaintiff's] high quality and unique services."); *id.* at ¶25 ("[T]he [m]arks have generated substantial and valuable goodwill and customer recognition.").

These allegations, which must be accepted as true at this stage of the case, are more than sufficient to withstand Defendants' motion to dismiss.[2] *See Cornell Pump*, 2018 WL 3827249, at *7 (denying a motion to dismiss for failure to sufficiently allege secondary meaning because "Plaintiff has presented allegations that relate to each of the four factors," and collecting several other cases reaching the same conclusion); *Vital Pharms., Inc. v. Gaspari Nutrition, Inc.*, 2011 WL 13217065, at *3 (S.D. Fla. June 6, 2011) (denying motion to dismiss and noting that secondary meaning is often a question of fact inappropriate for a motion to dismiss);

---

[2] Arguably, the allegation that Plaintiff had continuously used the marks in connection with its services for at least 6 years prior to Defendants' first alleged infringing use is sufficient by itself to withstand the motion to dismiss. *See Welding Servs.*, 509 F.3d at 1358 ("A proprietor can make a prima facie showing of 'secondary meaning' by showing that the name has been used in connection with the proprietor's goods or service[s] continuously and substantially exclusively for five years.") (citing 15 U.S.C. §1052(f)).

*Royal Palm Props., LLC v. Premier Estate Props., Inc.*, 2010 WL 1524720, at *2 (S.D. Fla. Apr. 15, 2010) (denying a motion to dismiss because "Plaintiff has pled more than conclusory allegations regarding the [four] factors necessary to show secondary meaning"); Doc. 25 at 12-14 (citing cases in which district courts in Florida denied motions to dismiss in similar circumstances).

## Conclusion

In sum, for the reasons stated above, it is **ORDERED** that:

1. Defendants' motion to dismiss (Doc. 20) is **DENIED**.

2. Defendants shall have 14 days from the date of this Order to answer the complaint. *See* Fed. R. Civ. P. 12(a)(4)(A).

**DONE and ORDERED** this 15th day of June, 2023.

_____
**T. KENT WETHERELL, II**
**UNITED STATES DISTRICT JUDGE**